# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED SATES OF AMERICA, | ) |
| | )    **No. 03 CR 0611-1** |
| v. | ) |
| | )    **Judge John W. Darrah** |
| JOSEPH VAZQUEZ-ORTERO. | ) |

## MEMORANDUM OPINION AND ORDER

On February 8, 2006, Defendant, Joseph Vazquez-Ortero, pled guilty to one count of conspiracy to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846. Presently before the Court is Defendant's Motion to Withdraw Guilty Plea, filed prior to his sentencing.

## BACKGROUND

In July 2003, Vazquez-Ortero, and two co-defendants, Keith Strainis and Edward Lawler, were indicted on one count of conspiracy to distribute in excess of five kilograms of cocaine. On June 9, 2004, Lawler pled guilty and, as part of his plea agreement, agreed to cooperate with the Government. In his plea agreement, Lawler described his relationship with Defendant as follows: "[Lawler] then contacted his employer, co-defendant Keith Strainis, whom defendant [Lawler] knew to store large quantities of cocaine for other persons, including but not limited to co-defendant Joseph Vazquez-Ortero." On February 1, 2005, Strainis also pled guilty and agreed to cooperate with the Government. In his plea agreement, Strainis also identified Defendant and Defendant's brother, Luis Vazquez, as being involved in multiple shipments of cocaine.

On February 8, 2006, Defendant pled guilty pursuant to a written plea agreement. Defendant agreed to cooperate with the Government and, as part of the plea agreement, admitted to his involvement in large shipments of cocaine, of which his co-defendants had already informed law

enforcement. In his plea agreement, Defendant admitted:

> In or about January 2003, defendant learned from his brother,
> Luis Vazquez, that co-defendant Keith Strainis had agreed to allow
> Luis Vazquez and others to use Stainis' truck stop, Top Cat Trucking,
> for the storage and unloading of trucks containing cocaine.
> Defendant was aware that Luis Vazquez arranged for shipments of
> 200 to 300 kilograms of cocaine, as well as large shipments of
> marijuana, to be brought to Top Cat Trucking, where the cocaine was
> unloaded. At the request of Luis Vazquez, defendant assisted in the
> receipt and unloading of the cocaine. More specifically, defendant
> drove around the area of Top Cat Trucking looking for law
> enforcement vehicles. On other occasions, defendant assisted in the
> unloading of the cocaine from the trucks.
>
> From January 2003 to June 2003, on four separate occasions,
> defendant purchased a portion of the shipments delivered to Top Cat
> Trucking. More specifically, defendant purchased 25 kilograms of
> cocaine, 40 kilograms of cocaine and 12 kilograms of cocaine (6
> kilograms of which defendant intended to deliver to Individual A) on
> three separate occasions. Additionally, defendant purchased
> approximately 300 pounds (approximately 136 kilograms) of
> marijuana from another shipment. Defendant paid Luis Vazquez
> $17,500 for each kilogram of cocaine, and then sold it to his
> customers from $18,000 per kilogram.

In return for Defendant's cooperation, the Government agreed: (1) to move the Court, pursuant to Guideline § 5K1.1, to impose a sentence at 85% of the low end of his advisory guideline range; (2) not to file an information, pursuant to 18 U.S.C. § 851, to increase the mandatory minimum based on his prior drug convictions; and (3) to accept a Rule 20 transfer of another case pending against the Defendant in the District of Puerto Rico and recommend that concurrent sentences be imposed on each case.

At the February 8, 2006 plea hearing, the Court conducted a plea colloquy, in which Defendant, under oath, answered as follows:

The Court: Would you say you're in good physical health?

The Defendant: No, sir, I'm not.

The Court: What ailments or disabilities do you suffer?

The Defendant: I do have degenerative joint disease. You know, I can't hardly use my arms. I get things coming out of the palm of my hand here, palm. And a lot of tiredness all of my body.

The Court: Do any of your illnesses impair your ability to understand the nature of these proceedings?

The Defendant: No. Your Honor, No.

The Court: Okay. Have you taken any drugs or alcoholic beverage in the last 24 hours?

The Defendant: No, Your Honor.

The Court: Have you ever been under the care of a doctor or in a hospital for a mental condition or addiction to narcotic drugs?

The Defendant: No, Your Honor.

The Court: Mr. Vazquez, have you had any difficulty in understanding what I've said so far?

The Defendant: No, Your Honor.

The Court: Mr. Collins, do you believe the defendant is competent to enter a plea of guilty?

Mr. Collins: I do, Your Honor.

The Court: Mr. Greenberg, do you believe your client is competent to enter a plea of guilty?

Mr. Greenberg: Yes, Judge.

The Court: I find the defendant is competent to enter a plea of guilty. Have you had enough time to talk to your lawyer about this matter?

The Defendant: Yes, Your Honor.

The Court: Are you satisfied with the advice and the efforts that he's made on your behalf?

The Defendant: Yes, Your Honor.

The Court: You're offering to plead guilty to Count 1 of the indictment; is that correct?

The Defendant: Yes, Your Honor.

The Court: Has Mr. Greenberg [Defendant's attorney] explained the nature of the charge to you?

The Defendant: Yes, Your Honor.

* * *

The Court: Mr. Collins has handed up a document entitled Plea Agreement. On the last page appears a line. Under the line is typed the words Joseph Vazquez-Ortero. Above the line are two signatures, Jose J. Vazquez and Pedro Lopez. Is that your signature?

The Defendant: Yes, Your Honor.

The Court: Did you sign those names?

The Defendant: Yes, Your Honor.

The Court: Did you read this before you signed it?

The Defendant: I have had - -

The Court: Was it read to you before you signed it?

The Defendant: I have plenty of confidence in my counsel.

The Court: Did Mr. Greenberg read this to you?

Mr. Greenberg: I sent him a copy of it, Judge, and we've gone through it.

The Court: Did you read this?

The Defendant: I read it once, yes, sir.

The Court: All right. And you say you went through this with Mr. Greenberg?

The Defendant: Yes, Your Honor.

The Court: Did he explain all of the terms and conditions of this agreement before you signed it?

The Defendant: Yes, sir.

The Court: Do you understand all the terms and conditions of this plea agreement?

The Defendant: I think I did.

The Court: Well, I don't want you to guess. Is there anything about it you don't understand?

The Defendant: I think I understand everything.

The Court: All right. Mr. Greenberg, do you believe that your client understands all the terms and conditions of the plea agreement?

Mr. Greenberg: Absolutely.

* * *

The Court: Mr. Vazquez, has anyone forced you in any way at all to cause you to plead guilty?

The Defendant: No, Your Honor.

The Court: Well, you seem to hesitate. Has there been any pressure on you by anyone to plead guilty?

The Defendant: I'm hesitating, you know, myself, but not really.

The Court: All right. But has anyone forced you to plead guilty?

The Defendant: No, Your Honor.

The Court: Has anyone threatened you in any way to plead guilty?

The Defendant: No, Your Honor.

The Court: Has anyone promised you anything to make you plead guilty other than what we've discussed here today?

The Defendant: Yes, Your Honor.

The Court: What is that?

The Defendant: That I might get some – for my cooperation, I might get some time off.

The Court: All right. And that's in the plea agreement where the government is obligated to recommend a sentence of either ten years in jail or 85 percent of the guidelines, the guideline term if you cooperate. Is that what you are talking about?

The Defendant: Yes, sir, I think it is that.

The Court: Other than that, and other than what's in this plea agreement, have there been any other promises made to you, Mr. Vazquez, to cause you to plead guilty?

The Defendant: No, Your Honor.

The Court: Is your decision to plead guilty entirely voluntary on your part?

The Defendant: With the help of my attorney, yes.

The Court: All right. I was going to get to that. You did discuss this with Mr. Greenberg?

The Defendant: Yes, Your Honor.

The Court: And you listened to his advice in this regard?

The Defendant: Yes, Your Honor.

The Court: Did he promise you what the sentence would be other than what we've talked about here today?

The Defendant: No, no, Your Honor. He just told me about - -

The Court: What's in the plea agreement.

The Defendant: - - what's in the plea agreement, if I got good time.

The Court: Do you understand, though, the decision to plead guilty, Mr. Vazquez, must be your decision and your decision alone regardless of any advice your attorney has given you. Do you understand that?

The Defendant: Yes, Your Honor.

The Court: And is this your decision?

The Defendant: Yes, it is my decision.

On March 17, 2006, the Court received a letter from Defendant, in which Defendant asserted that his attorney did not discuss the plea agreement with him and that his attorney "threatened" him with life imprisonment. In light of Defendant's letter and accusations, Defendant's counsel withdrew; and Defendant was provided new counsel.

On February 2, 2007, the Court received another letter from Defendant, in which Defendant asserted that the plea agreement should not be valid because the Government used his proffer to write the plea agreement. That same month, Defendant's second counsel moved to withdraw, asserting that there had been a complete breakdown in the attorney-client relationship. Defendant's counsel's motion was granted, and Defendant was appointed new counsel. Defendant now seeks to withdraw his guilty plea, arguing that his guilty plea was neither knowing or voluntary because: (1) his attorney did not discuss the plea agreement with him, (2) his attorney threatened him with life imprisonment if he did not accept the plea agreement, (3) information provided in the proffer session

7

was used against him, and (4) he was under the influence of one or two medications when he pled guilty.

## ANALYSIS

A defendant does not have an absolute right to withdraw his guilty plea. *See United States v. Pike*, 211 F.3d 385, 388 (7th Cir. 2000) (*Pike*). Prior to sentencing, the court may permit a defendant to withdraw his plea if he presents a "fair and just" reason for doing so. *See* Fed. R. Crim. P. 32(e). The burden of justifying such rests with the defendant. *Pike*, 211 F.3d at 288. An evidentiary hearing should be held if the movant offers any substantial evidence that impugns the validity of his plea. *See United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004) (*Jones*). An evidentiary hearing is not required if the movant fails to present this substantial evidence or if the movant's allegations are mere conclusions or are inherently unreliable. In addition, the movant must overcome the presumption of verity that attaches to statements made at the Rule 11 colloquy. *See Jones*, 381 F.3d at 618.

Generally, a defendant's claim "that statements made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (*Stewart*). "A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over. There will be no further evidentiary hearing and an appeal is pointless." *Stewart*, 198 F.3d 987; *see also Simelton v. Frank*, 446 F.3d 666, 670 (7th Cir. 2006) (admissions made during a guilty plea are presumed true).

Defendant first argues that his plea was not voluntary because his attorney did not discuss the plea agreement with him. This argument is directly contrary to defendant's sworn statements

8

made during the plea hearing. At the hearing, Defendant stated that he had enough time to speak with his attorney about the plea and that he was satisfied with his attorney's advice and efforts – even stating that he had "plenty of confidence in my counsel." Defendant further stated that he had read the plea agreement and that he reviewed the agreement with his attorney.

Defendant next argues that his plea was not voluntary because his attorney threatened him with life imprisonment if he did not accept the plea agreement. This argument is also contrary to defendant's statements during the plea hearing, wherein defendant stated that no one forced, pressured, or threatened him to plead guilty. Defendant also confirmed that the decision to plead guilty was his – "it is my decision."

Defendant argues that he seeks to withdraw his plea because the Government used information obtained at his proffer to further incriminate him. Defendant does not identify what information he believes was improperly used. The plea agreement specifically required that the Defendant acknowledge that he engaged in certain conduct. This conduct included Defendant's knowledge and involvement with the shipments of hundreds of kilograms of cocaine. In addition, during the plea hearing, the Defendant stated that he fully understood that he was accepting responsibility for his involvement with the shipments of cocaine in exchange for cooperation credit and other benefits included in the plea agreement.

Lastly, the Defendant asserts that he was under the influence of medication, for pain relief, at the time of his guilty plea. He also asserts that his blood sugar was high the day that he entered his guilty plea. Defendant's new assertions are contrary to his statement made under oath at the plea hearing, wherein Defendant told the Court that: (1) his only ailment was degenerative joint disease that did not affect his ability to understand the proceedings, (2) he had not taken any drugs or alcohol

9

in the last twenty-four hours, and (3) he fully understood the proceedings. The Defendant's lawyer and the prosecution also opined that the Defendant was competent to plead guilty. Based on all of this and the Court's own observations of the Defendant during the plea colloquy, the Court found the Defendant competent to enter a guilty plea.

In sum, there is also no evidence that Defendant's plea was not voluntary. The Court conducted the plea proceedings in strict conformity with Rule 11's requirements. Defendant's guilty plea was not accepted until the Court addressed Defendant personally in open court and determined that the plea was voluntary and not the result of force or threats or promises apart from the plea agreement. Defendant's new assertions that he lied during his plea hearing do not constitute a fair and just reason to allow Defendant to withdraw his guilty plea. *See Stewart*, 198 F.3d at 987. In addition, a long delay in seeking to withdraw the guilty plea, as in this case, is contrary to any claim that the guilty plea was coerced. *See United States v. Vlamakis*, 872 F. Supp. 533, 538 (N.D. Ill. 1995).

## CONCLUSION

For the reasons stated above, Defendant has failed to present a fair and just reason to withdraw his plea of guilty. Accordingly, Defendant's Motion to Withdraw Guilty Plea is denied.

Dated: *April 19, 2007*

JOHN W. DARRAH
United States District Court Judge

10